UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADVANCED PAIN MANAGEMENT
AND SPINE SPECIALISTS, PA                         Case No. 2:18-mc-8-FtM-99CM

       Petitioner,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS PETITION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND

Petitioner, Advanced Pain Management and Spine Specialists, PA ("**Advanced Pain**"), through undersigned counsel, and pursuant to 11th Cir. R. 3-1 and M.D. Fla. L.R. 3.01, hereby files its Memorandum of Law in Opposition to the Motion to Dismiss Advanced Pain's Petition to Set Aside Civil Investigative Demand 2018-025 (the "**Motion to Dismiss**") [Doc.# 3] filed by Respondent, the United States of America (the **"Government"**) on August 1, 2018.

## I.      INTRODUCTION

The Government's Motion to Dismiss falsely states that Advanced Pain and the undersigned failed to satisfy their meet-and-confer obligations before filing Advanced Pain's Petition to Set Aside Civil Investigative Demand 2018-025 (the "**Petition**").   While the undersigned acknowledges that Advanced Pain's Petition inadvertently omitted the required certification relating to the occurrence of a good faith meet-and-confer communication between counsel prior to addressing a discovery dispute with this Court, the prefiling meet-and-confer conversation, in fact, occurred via teleconference with Assistant U.S. Attorney Kyle Cohen on June 19, 2018, and, as such, Petitioner's meet-and-confer obligations were satisfied.   The

Government's assertion that "there was no attempt whatsoever to confer with the United States" is simply not accurate. Doc.#3 at 5.

Separately, the Motion to Dismiss incorrectly argues that Advanced Pain's undue burden objection raised in the Petition seeking to set aside Civil Investigative Demand 2018-025 ("**CID 2018-025**") should be overruled because Advanced Pain did not supply supporting affidavits.  As an initial matter, the Government's Motion to Dismiss ignores and fails to address the Petition's objection to CID 2018-025 based upon the Government's ongoing harassment of Advanced Pain through the issuance of multiple subpoenas and CIDs over a period of over two (2) years.  Advanced Pain's harassment objection, which is supported by the facts alleged in the Petition, is not required to be supported by reference to affidavits.  That issue aside, the relevant case law is clear that courts may rely upon other evidence or explanation in court papers to support an undue burden discovery objection.  Here, the Government's Motion to Dismiss should be denied because Advanced Pain's Petition sets forth sufficient facts, explanation, and evidence supporting its harassment and undue burden objections.

Alternatively, to the extent that this Court requires supporting affidavits in reference to the objections raised in the Petition, Advanced Pain has provided herein the affidavits of (a) Dr. Jonathan Daitch ("**Dr. Daitch**"), Advanced Pain's principal; and (b) Leslie Dubé ("**Ms. Dubé**"), Advanced Pain's IT Director.[1]  As reflected in the affidavits, the undue burden imposed by the Government's issuance of multiple CIDs over more than a 2-year period has resulted in extraordinary financial, labor, productivity, and reputational damage and losses to Advanced Pain.

---

[1]     The affidavits of Dr. Daitch and Ms. Dubé are attached hereto as Exhibits "A" and "B", respectively.  References herein to their respective affidavits are denoted as "Dr. Daitch Aff. at ¶ __" and "Ms. Dubé Aff. at ¶ __."

In particular, Advanced Pain has expended hundreds of hours of time and effort appropriately cooperating with the Government to respond to multiple CIDs seeking production of documents and deposition testimony.  Advanced Pain's cooperation with the Government's ongoing investigation – which seemingly has no end in sight – has come at a cost of hundreds of thousands of dollars in the form of attorneys' fees and costs associated with the process of culling, reviewing, and producing tens of thousands of pages of electronically-stored information ("**ESI**") to the Government.

Despite cooperating with the Government by, *inter alia*, producing tens of thousands of pages of documents and providing hours of deposition testimony, the Government chose to identify both Advanced Pain and Dr. Daitch by name in a press release after Dr. Michael Frey ("**Dr. Frey**"), a former partner of Advanced Pain, pleaded guilty and entered into a civil settlement with the Government.  This action, along with the Government's issuance of multiple subpoenas and CIDs directed to Advanced Pain, has caused serious reputational damage to Advanced Pain and Dr. Daitch, both of whom are responsible for the treatment of thousands of medical patients in the Southwest Florida region and had no involvement whatsoever with Dr. Frey's unlawful actions.  As a result of what clearly is the Government's continued harassment of Advanced Pain over several years, the company has lost employees and morale is low among its remaining staff.  Moreover, the practice has had difficulty in recruiting new personnel in light of the Government's investigatory activities that are now plastered throughout the public domain.

Simply put, the time has come for the Government to either file a civil lawsuit against Advanced Pain or otherwise conclude its investigation.  In any event the undue burden and harassment that would be associated with Advanced Pain's response justifies this Court setting aside CID 2018-025.  Accordingly, as further explained below, this Court should (a) set aside CID

2018-025; (b) grant the relief sought in Advanced Pain's Petition; and (c) deny the Government's

Motion to Dismiss.

## II.      ARGUMENT

### A.      Standard

A civil investigative demand ("**CID**") is a federal statutory mechanism that permits the

Government to engage in nonreciprocal, presuit discovery against a person or entity that may be

the subject of a false claims investigation.  37 U.S.C. § 3733(a) states:

> **(1) Issuance and service.**--Whenever the Attorney General, or a designee (for purposes of this section), has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation, the Attorney General, or a designee, may, before commencing a civil proceeding under section 3730(a) or other false claims law, or making an election under section 3730(b), issue in writing and cause to be served upon such person, a civil investigative demand requiring such person--
>
> > **(A)** to produce such documentary material for inspection and copying,
> >
> > **(B)** to answer in writing written interrogatories with respect to such documentary material or information,
> >
> > **(C)** to give oral testimony concerning such documentary material or information, or
> >
> > **(D)** to furnish any combination of such material, answers, or testimony.
>
> The Attorney General may delegate the authority to issue civil investigative demands under this subsection. Whenever a civil investigative demand is an express demand for any product of discovery, the Attorney General, the Deputy Attorney General, or an Assistant Attorney General shall cause to be served, in any manner authorized by this section, a copy of such demand upon the person from whom the discovery was obtained and shall notify the person to whom such demand is issued of the date on which such copy was served. Any information obtained by the Attorney General or a designee of the Attorney General under this section may be shared with any qui tam relator if the Attorney General or designee determine it is necessary as part of any false claims act[1] investigation.

Pursuant to its legislative history, the original intent of the CID was to be a tool for the government "to determine whether enough evidence exists[s] to warrant the expense of filing, as well as to prevent the potential Defendant from being dragged into court unnecessarily." H.R. Rep. No. 660, 99th Cong. 2d Sess. 26 (1986); *see also United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995) (stating that a purpose of the CID is to allow the government "to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested whether there is a grounds"). Prior to 2010, the Attorney General was the only person authorized to issue CIDs. The Attorney General was not permitted to delegate authority to issue CIDs. In May 2009, the Fraud Enforcement Recovery Act authorized the Attorney General to delegate authority to issue CIDs to other individuals within the Department of Justice. Beginning in March 2010, all ninety-three (93) U.S. Attorneys became authorized to issue CIDs. *Redelegation of Authority of Assistant Attorney General, Civil Division, to Branch Directors, Heads of Offices and United States Attorneys in Civil Division Case*, Directive No. 1 – 10, 75 C.F.R. 14070 (March 24, 2010). Since this time, the Government has aggressively used the CID to investigate FCA cases. Without the important 1986 safeguards, however, the original legislative intent of the CID to quickly assess potential charges without undue time and expense has been defeated. As in the instant case, the Government utilizes the CID for lengthy, drawn-out investigations at the expense of both the taxpayer and the person or entity being investigated. Essentially, the CID is being used as a fishing expedition to justify multiple-year investigations and usurp the Petitioner's day in court.

Pursuant to 37 U.S.C. § 3733(j)(2), a recipient of a CID may petition the district court to modify or set aside the CID. 37 U.S.C. § 3733(j)(2) states:

> **(A)** Any person who has received a civil investigative demand issued under subsection (a) may file, in the district court of the United States for the judicial district within which such person

resides, is found, or transacts business, and serve upon the false claims law investigator identified in such demand a petition for an order of the court to modify or set aside such demand. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the district court of the United States for the judicial district in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph must be filed--

(i) within 20 days after the date of service of the civil investigative demand, or at any time before the return date specified in the demand, whichever date is earlier, or

(ii) within such longer period as may be prescribed in writing by any false claims law investigator identified in the demand.

(B) The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the demand to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the demand, in whole or in part, except that the person filing the petition shall comply with any portions of the demand not sought to be modified or set aside.

Pursuant to 37 U.S.C. § 3733(j)(6), "[t]he Federal Rules of Civil Procedure shall apply to any petition under this subsection, to the extent that such rules are not inconsistent with the provisions of this section." Consequently, the discovery objections that may be interposed in response to discovery taken in a federal civil proceeding may also be interposed, as may be appropriate, by a recipient of a CID.

Advanced Pain's Petition moves to set aside CID 2018-025 on the grounds that it is (a) overly broad; (b) unduly burdensome; (c) harassing; and (d) duplicative. Doc.#1 at p. 6. As explained below, Advanced Pain's Petition, along with the affidavits of Dr. Daitch and Ms. Dubé attached hereto, demonstrate that Advanced Pain's objections are appropriate. As such, this Court should (a) set aside CID 2018-025; (b) grant the relief sought in Advanced Pain's Petition; and (c) deny the Government's Motion to Dismiss.

**B.      Advanced Pain and the Undersigned Fully Satisfied Their Good Faith Meet-and-Confer Obligations**

As an initial matter, the Government's Motion to Dismiss falsely alleges that Advanced Pain violated the applicable Federal Rules, along with this Court's Local Rules, by failing to confer with the Assistant U.S. Attorney regarding Advanced Pain's specific objections to CID 2018-025 before filing the Petition. Doc.#3 at pp. 1-2.  Regrettably, the Petition inadvertently omitted the required prefiling, good faith meet-and-confer certification.[2]  That being said, as described below Advanced Pain and the undersigned fully complied with its good faith meet-and-confer obligations prior to filing the Petition.

The Government's investigation over the past three (3) years has focused on three areas: 1) Advanced Pain's anesthesia business model; 2) alleged kickbacks received by Dr. Michael Frey, a former partner of the Practice, for back braces and compound medications; and 3) UDT confirmatory testing.  Since the first subpoena was issued over two (2) years ago, Advanced Pain has taken the position that the Practice's anesthesia business model does not violate the federal Anti-kickback Statute ("AKS").  Advanced Pain, and its compliance counsel David Vaughn, have also established that the Practice relied upon advice of counsel when creating the company, Anesthesia Partners LLC, designed to provide anesthesia services to the ambulatory service center. This legal analysis and Advanced Pain's arguments have been exhaustively documented over the past two (2) years in the form of White Papers, White Paper Supplements, document productions, and additional written and oral communications with the Government.

---

[2]      Advanced Pain and the undersigned apologize to the Court for the inadvertent omission of the required certification in the Petition, which was an unfortunate, yet wholly unintentional oversight.  For the sake of clarity, prior to filing the Petition on Advanced Pain's behalf, the undersigned conferred in good faith with Assistant U.S. Attorney Kyle S. Cohen via telephone in an attempt to resolve Advanced Pain's objections to CID 2018-025 without this Court's intervention.  Unfortunately, counsel for the parties were unable to resolve the issues raised in the Petition.

Since the issuance of CID 2017-01, Advanced Pain has maintained that its urine drug testing ("UDT") policy regarding the ordering of confirmation testing for new patients is medically necessary, especially in light of the pain management clinic's high-risk population of patients who are opioid reliant.   Advanced Pain's arguments regarding the UDT policy have also been exhaustively documented in numerous written and oral communications to the Government, including analysis of Advanced Pain's UDT policy in conjunction with the local coverage determinations ("LCDs") and other instructive medical guidelines, statistical data, and a thorough explanation of the necessity of the UDT policy for patient safety, especially in light of the current national opioid epidemic.

By the Spring of 2018, after two (2) years of discussion, Advanced Pain had come to an impasse with the Government and all avenues of argument on the two (2) central issues of the anesthesia business model and UDT policy had been exhausted.[3] Advanced Pain does not believe its business model or the UDT policy violate any law and the Government disagrees.   At this point, Advanced Pain welcomed the filing of a Government Complaint in federal court regarding the Company's anesthesia business model and UDT policy, as opposed to continuing to engage in nonreciprocal, pre-suit discovery pursuant to 37 U.S.C. § 3733 after the Government's extensive and intrusive investigation into Advanced Pain lasting approximately three (3) years.   The undersigned advised the Government of Advanced Pain's position and the Government informed

---

[3]     The kickback allegations pursuant to the braces and compound medications were settled with the Government.  Dr. Michael Frey was a former partner of the Practice.  On June 4, 2018, Dr. Frey plead guilty to one count of 18 USC §371 for kickbacks related to spinal braces and one count of 18 USC §371 for kickbacks related to compound medications.   Dr. Frey also entered into a civil settlement with the Government.   According to Dr. Frey's plea agreement, Dr. Frey personally received the kickback funds from his co-conspirators.  The funds were placed in Dr. Frey's personal bank accounts and none of the funds were deposited into the Practice's accounts.  Neither Dr. Daitch nor the Practice participated in Dr. Frey's kickback scheme or received any benefit whatsoever from Dr. Frey's kickback scheme. Dr. Frey was expelled from the Company as of April 30, 2018.

undersigned counsel that the undersigned would be notified in advance of the United States filing a Complaint.

On May 31, 2018, the Government advised undersigned counsel of the issuance of another CID to Advanced Pain, CID 2018-0125. The issuance of a yet another CID came as a surprise to undersigned counsel as Advanced Pain was expecting the Government to file a Complaint, allowing Advanced Pain its day in court. *See* Doc.#1 at Ex. "1."

On June 19, 2018, the undersigned conferred via telephone with Assistant U.S. Attorney Kyle Cohen regarding Advanced Pain's intention to file a Petition to Set Aside CID 2018-025. During that conversation, the undersigned and AUSA Cohen discussed the basis for Advanced Pain's Petition to Set Aside CID 2018-025, specifically the undue burden of a seemingly never-ending government investigation and numerous Government demands, via subpoenas and CIDs, issued to Advanced Pain's medical practice.[4] Also discussed during the same conversation were

---

[4]     The Government initiated a False Claims Act ("**FCA**") investigation of Advanced Pain and its affiliated entities in 2015. Over the past two (2) years, Advanced Pain and its affiliates have responded to the following government demands for documents and/or testimony pursuant to this FCA investigation:

- The DOD-OIG subpoena to APMSS on May 18, 2016.
- The DOD-OIG subpoena to PCP on May 18, 2016.
- The DOD-OIG subpoena to Anesthesia Partners on May 18, 2016.
- HHS-OIG subpoena to APMSS on August 2, 2016.
- HHS-OIG subpoena to PCP on August 2, 2016.
- HHS-OIG subpoena to Anesthesia Partners on August 2, 2016.
- CID 2017-1 to APMSS issued by the US Attorney's Office – Middle District of Florida on January 10, 2017.
- CID 2017-48 to APMSS issued by the US Attorney's Office – Middle District of Florida on November 11, 2017.
- CID 2016-91 to Dr. Daitch for deposition testimony issued by the US Attorney's Office – Middle District of Florida on October 25, 2016.
- CID 2016 to Dr. Michael Frey for deposition testimony issued by the US Attorney's Office – Middle District of Florida in October 2016.
- CID 2017-19 to Dr. Daitches' wife, Barbara Daitch, for deposition testimony issued by the US Attorney's Office – Middle District of Florida on May 3, 2017.
- CID 2017-30 to legal compliance counsel for APMSS, David Vaughn, Esq. issued by the US Attorney's Office – Middle District of Florida on September 30, 2017.

alternate resolutions to the Government's FCA investigation.[5]   It was clear from the conversation between AUSA Cohen and undersigned counsel on June 19, 2018, that a resolution could not be reached regarding the Petition to Set Aside CID 2018-25 prior to the filing deadline and, as such, the Petition to Set Aside CID 2018-25 was filed on June 21, 2018.   Accordingly, counter to the Government's false statement to the contrary, it is clear that Advanced Pain and the undersigned fully and appropriately discharged their obligations to meet and confer with the Assistant U.S. Attorney prior to filing the Petition.

**C.     The Record Evidence, Facts, and Explanations Support Advanced Pain's Undue Burden Objection**

The Government's Motion to Dismiss wrongly argues that the Petition lacks requisite support for Advanced Pain's undue burden objection on the ground that the Petition is not accompanied by affidavits.   While it is acknowledged that providing an affidavit is one – and perhaps the most common – method under federal law of providing requisite factual support for an undue burden discovery objection, it is not the sole manner in which the objection may be substantiated by the objecting party.

The Federal Rules of Civil Procedure apply with respect to a court's determination of objections to a CID.   *See* 37 U.S.C. § 3733(j)(6).   It is well settled that federal district courts are granted wide discretion in controlling and managing civil discovery matters.   *See, e.g., Chrysler Intern. Corp. v. Chemaly*, 280 F. 3d 1358, 1360 (11th Cir. 2002) (stating that "we stress the broad

---

- On April 6, 2018, the government requested additional patient records from APMSS via letter pursuant to CID 2017-48.

[5]     This conversation is corroborated by undersigned counsel's billing records on June 19, 2018, "Teleconference with AUSA Kyle Cohen regarding Motions to Set Aside CID and…".   The content of this telephone conversation was also discussed with Assistant U.S. Attorney Sean Flynn, Mr. Cohen's supervisor, via telephone on June 22, 2018.   This is also corroborated by the undersigned's billing records.

discretion district courts have in managing their cases") (citing *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F. 3d 1234, 1269 (11th Cir. 2001)); *Perez v. Miami-Dade County*, 297 F. 3d 1255, 1263 (11th Cir. 2002) (noting that "district courts are entitled to broad discretion in managing pretrial discovery matters"); *Klay v. All Defendants*, 425 F. 3d 977, 982 (11th Cir. 2005) (same); *Republic of Ecuador v. Hinchee*, 741 F. 3d 1185, 1188 (11th Cir. 2013) (same). Accordingly, this Court has broad discretion to determine the discovery objections raised in Advanced Pain's Petition.

Contrary to the Government's argument, several courts have recognized that supplying affidavits is not the sole manner in which to support an undue burden objection. In particular, several courts recognize that an undue burden discovery objection may be factually supported by explanation in legal papers or other evidence. *See, e.g.*, *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (stating that "[g]enerally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden"); *Trinos v. Quality Staffing Services Corp.*, 250 F.R.D. 696, 698-99 (S.D. Fla. 2008) (recognizing that affidavits are not the sole form of evidentiary material that may support an objection that a discovery request is unduly burdensome); *Border Collie Rescue, Inc. v. Ryan*, No. 304CV568J32HTS, 2005 WL 662724 at *2 (M.D. Fla. Mar. 15, 2005) (stating that "[t]he objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the] question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (quoting *Hammond v. Lowes Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003)).

Here, even in the absence of supporting affidavits, the Petition makes reference to undisputed (and indisputable) facts demonstrating that CID 2018-025 is unduly burdensome and

harassing.  In particular, the Petition accurately states that the Government's investigation of Advanced Pain and its related entities began approximately three (3) years ago in 2015.  Doc.#1 at p. 2.  Advanced Pain and its related entities have been recipients of (a) three (3) Department of Defense – Office of Inspector General subpoenas; (b) three (3) Health and Human Services – Office of Inspector General subpoenas; (c) three (3) CIDs seeking production of documents; (d) one (1) CID for the deposition of Dr. Frey; (e) one (1) CID for the deposition of Dr. Daitch; (f) one (1) CID for the deposition of Barbara Daitch, Dr. Daitches' wife; and (g) one (1) CID for the deposition of David Vaughn, Advanced Pain's legal compliance counsel.  *Id*.  Separately, Advanced Pain and its related entities have produced to the Government over 74,000 pages of documents.  *Id*.

It is undisputed (and, again, indisputable) that Advanced Pain and its related entities **fully** complied with all of the foregoing requests from the Government.  Moreover, Dr. Daitch and Advanced Pain's legal compliance counsel made themselves available to the Government in connection with the Government's investigation.  *Id*. at pp. 2-3.  Despite Advanced Pain's and its related entities' complete and full cooperation to date in the Government's longstanding investigation, as of May 30, 2018 the Government had made no decision as to whether the Government will pursue any legal claims against Advanced Pain and its related entities even though the same issues, the anesthesia business model and UDT policy, have been discussed to exhaustion with the Government over the past two (2) years. Doc.#1 at Ex. "1", Mr. Cohen's May 30, 2018 email to the undersigned.  Accordingly, the undisputed facts of the Petition support Advanced Pain's discovery objections inasmuch as they establish the historical backdrop of the Government's lengthy, exhaustive, and detailed investigation of Advanced Pain and its related

entities, along with Advanced Pain's history of providing the Government will nothing less than full, complete, and extensive cooperation over a period of years.

Now, CID 2018-025 – which is the Government's latest CID directed against Advanced Pain – demands production of 193 patient's medical records.  *Id*. at p. 3.  To the extent that the allegations of the Petition regarding the specific impact and prejudice to Advanced Pain forming the backdrop of its undue burden and harassment discovery objections require additional factual support, the respective affidavits of Dr. Daitch and Ms. Dubé attached hereto exhaustively provide the necessary factual details supporting Advanced Pain's discovery objections raised in Advanced Pain's Petition.

In particular, the affidavit of Dr. Daitch establishes, *inter alia*, the following facts supporting Advanced Pain's objections to CID 2018-025:

- Advanced Pain and its related entities are extremely busy and have thousands of patients at any given point in time requiring the employment of over seventy-five (75) employees, agents, and independent contractors.  Ex. "A", Dr. Daitch Aff. at ¶ 7.

- Including CID 2018-025, the Government has issued six (6) subpoenas and seven (7) CIDs issued within a two (2) year period to Advanced Pain and its related entities.  *Id*. at ¶ 9.

- The Government deposed Ms. Daitch on December 19, 2016, for approximately seven (7) hours.  Dr. Daitch was deposed by the Government on October 19, 2017, for approximately seven (7) hours, requiring that Dr Daitch reschedule all of his patients to the morning in order to accommodate the Government's deposition request.  *Id*. at ¶ 10.

- Thus far, the Company has provided over 74,000 pages of documents in the FCA investigation.  *Id*. at ¶ 11.

- Ms. Dubé, Advanced Pain's IT Director, expended over 116 hours responding to the government subpoenas and CIDs.  This does not include the hours spent responding to the initial three (3) subpoenas from the Department of Defense. Ms. Dubé also enlisted the assistance of five (5) other employees from various departments to fulfill the document production requests and these employees spent an additional forty-six (46) hours completing their assigned tasks.  *Id*. at ¶ 12.

- Advanced Pain and its related entities have spent significant amounts of time, money, and resources responding to these document productions, including hiring a vendor to prepare patient records, paying for and expending employees' work time to gather and review documents for production, meeting with legal counsel to discuss the Government's allegations, and paying significant legal fees. Advanced Pain and its related entities have spent over $10,000 in employee/vendor time alone responding to the Government's subpoenas and CIDs pursuant to the FCA investigation. *Id*. at ¶¶ 14-15.

- The Company has paid over $350,000.00 in legal fees responding to and defending the FCA allegations made by the Government. *Id*. at ¶ 16

- Dr. Daitch, along with members of Advanced Pain's management team, have spent hundreds of hours meeting with legal counsel to discuss the Government's allegations, reviewing patient charts, reviewing the substantial document productions, working with counsel to identify attorney-client privileged documents within the productions, reviewing local coverage determinations ("LCDs") and other medical guidelines to assist in the defense of the Company, reviewing legal arguments provided to the Government, and reviewing evidence that goes back as far as 2010 pursuant to the Government's requests. The time and energy spent on these endeavors has taken away from the time that Dr. Daitch would normally spend on quality patient care and follow-up. *Id*. at ¶ 17.

- Since the first subpoena was issued, Advanced Pain and its related entities have taken the position that their anesthesia business model does not violate the federal Anti-kickback Statute (the "**AKS**"). Dr. Daitch informed the Government that the Company relied upon advice of counsel, compliance attorney David Vaughn, Esq., regarding the structure of Anesthesia Partners and compliance with the AKS prior to establishing the anesthesia services company. Advanced Pain and its related entities formally waived attorney-client privilege on this limited issue and Mr. Vaughn provided email communications and Interrogatories pursuant to CID 2017-30. *Id*. at ¶ 19.

- Mr. Vaughn has made himself readily available to the Government to discuss the legal analysis regarding Advanced Pain's and its related entities' anesthesia business model and compliance with the AKS. Mr. Vaughn informed the Government that he does not believe that the anesthesia business model violates the AKS; he stated that this is the guidance provided to Advanced Pain and its related entities when Anesthesia Partners was established and this is the same advice he would provide today. *Id*. at ¶ 20.

- Mr. Vaughn, along with Advanced Pain's current counsel, FisherBroyles LLP, provided the Government with a White Paper and White Paper Supplement analyzing the Company's anesthesia business model and distinguishing this model from Advisory Opinion 12-06, which the Government relies upon when alleging a

violation of AKS, to Health and Human Services – Office of Inspector General (**"HHS-OIG"**).   Mr. Vaughn and FisherBroyles LLP also participated in teleconferences with the United States Attorney's Office and HHS-OIG regarding this analysis.  The Government has indicated it disagrees with the analysis, however, even though Advanced Pain and its related entities requested a response, none has been received from the Government as to why the anesthesia business model potentially violates the AKS.  *Id.* at ¶ 21.

- The kickback allegations pursuant to the braces and compound medications were settled with the Government.  Dr. Michael Frey was a former partner of Advanced Pain and its related entities.  On June 4, 2018, Dr. Frey plead guilty to one count of 18 USC §371 for kickbacks related to spinal braces and one count of 18 USC §371 for kickbacks related to compound medications.  Dr. Frey also entered into a civil settlement with the Government.  According to Dr. Frey's plea agreement, Dr. Frey personally received the kickback funds from his co-conspirators.  The funds were placed in Dr. Frey's personal bank accounts and none of the funds were deposited into accounts belonging to Advanced Pain and its related entities.  Neither Dr. Daitch nor Advanced Pain and its related entities participated in Dr. Frey's kickback scheme.  Neither Dr. Daitch nor Advanced Pain and its related entities received any benefit whatsoever from Dr. Frey's kickback scheme; the Company does not bill for either back braces or compound medications.  Dr. Frey was expelled from the Company as of April 30, 2018.  *Id.* at ¶ 23.

- Since the issuance of CID 2018-025 and the entry of Dr. Frey's guilty plea, Advanced Pain and its related entities have suffered serious economic setbacks. Advanced Pain and its related entities lost insurance contracts, Medicare has suspended payments for Anesthesia Partners, certain pharmacies are refusing to fill patient prescriptions, and Advanced Pain and its related entities lost patients. Furthermore, three (3) employees have resigned, morale is extremely low, and the staff is extremely stressed by these continuous Government demands.  This is made even more difficult by the serious reputational harm suffered by Dr. Daitch, Advanced Pain, and its related entities.  Although neither Dr. Daitch nor Advanced Pain and its related entities were charged with a crime, pled guilty, or entered into a settlement agreement with the Government, they were named in the Government's press release after Dr. Frey's guilty plea and civil settlement. This reputational damage makes it very difficult to recruit new doctors and new employees in order to rebuild the practice and maintain viability.  *Id.* at ¶ 26.

- CID 2018-25 appears to be a fishing expedition for the Government to find something to validate its three (3) year investigation.  Meanwhile the constant stress of the situation and the exorbitant time, energy, and money being spent on these never-ending Government productions and demands are substantially harming Advanced Pain and its related entities and taking away from the quality of care that they provide to their patients.  *Id.* at ¶¶ 28-29.

15

Additionally, the affidavit of Ms. Dubé establishes, *inter alia*, the following facts that support the discovery objections interposed in Advanced Pain's Petition:

- When Advanced Pain and its related entities received a subpoena or CID, Ms. Dubé gathered the requested documents and coordinated the document production. The requests included corporate documents, email communications, patient medical records, policies and procedures, certifications, employee records, complete computer file folders, statistical data, audits reports, and other documentation. Ex. "B", Ms. Dubé Aff. at ¶ 10.

- Ms. Dubé had to run numerous searches with varying terms in order to ensure that she had collected all of the responsive documents to the subpoenas and CIDs. *Id*. at ¶ 11.

- Ms. Dubé spent over 116 hours compiling information in response to the Subpoenas and CIDs in the FCA investigation. This does not include the hours spent responding to the initial three (3) subpoenas from the Department of Defense as Ms. Dubé was not keeping record of her time during this initial inquiry. *Id*. at ¶ 12.

- In order to complete the extensive document productions, Ms. Dubé sought additional assistance from five (5) employees from various departments who worked an additional 46 hours (total) completing their assigned tasks. *Id*. at ¶ 13.

- Advanced Pain and its related entities had to hire an outside vendor to prepare the patient medical records for the document production due to the voluminous request. Advanced Pain and its related entities paid this vendor $3,930 for its services. *Id*. at ¶ 14.

- Ms. Dubé is the only employee in the IT Department and my absence from her original job duties creates a serious burden upon Advanced Pain and its related entities, however Ms. Dubé is the only employee with the requisite knowledge of computer networks and electronic health records with approved access who can complete these tasks. *Id*. at ¶ 17.

- Advanced Pain and its related entities expended significant money and resources to answer continuous requests from the Government. The document productions require an exorbitant amount of time and effort from employees. The document productions interrupt daily operations, often for weeks at a time, and create additional stress amongst the staff. Advanced Pain and its related entities spent over $10,000 in employee/vendor time alone responding to these requests. These costs do not include the time Dr. Daitch and other members of the management staff have expended over this two to three year time period. *Id*. at ¶ 18.

Collectively, the affidavits of Dr. Daitch and Ms. Dubé, along with the undisputed facts set forth in Advanced Pain's Petition, provide the necessary factual underpinnings supporting Advanced Pain's discovery objections interposed in response to CID 2018-025.  *See*, *e.g.*, *Coker*, 177 F.R.D. at 686; *Trinos*, 250 F.R.D. at 698-99; *Border Collie Rescue, Inc.*, 2005 WL 662724 at *2; *Hammond*, 216 F.R.D. at 672.  Accordingly, this Court should (a) set aside CID 2018-025; (b) grant the relief sought in Advanced Pain's Petition; and (c) deny the Government's Motion to Dismiss.

## III.     REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Petitioner requests oral argument. It is estimated that the argument would take approximately one hour.

## IV.     CONCLUSION

Based on the foregoing, it is clear that Advanced Pain's Petition and the objections raised therein are appropriate and supported by sufficient evidence, information, and facts.  It is further clear that Advanced Pain and the undersigned appropriately complied with its prefiling meet-and-confer obligations prior to filing Advanced Pain's Petition.   Accordingly, Advanced Pain respectfully requests that this Court (a) set aside CID 2018-025; (b) grant the relief sought in Advanced Pain's Petition; (c) deny the Government's Motion to Dismiss; and (d) enter such other and further relief this Court deems just and proper.

Respectfully submitted,

**FISHER BROYLES LLP**
*Attorneys for Petitioner, Advanced Pain Management
and Spine Specialists*
2390 Tamiami Trail North, Suite 100
Naples, FL 34103
Telephone: (202) 570-0248
Facsimile:  (239) 236-1260


By: /s/ Brian E. Dickerson
**BRIAN E. DICKERSON**
Fla. Bar No. 106615
*brian.dickerson@fisherbroyles.com*


By: /s/ Nicole Hughes Waid
**NICOLE HUGHES WAID**
Fla. Bar No. 121720
*nicole.waid@fisherbroyles.com*


### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document was served via CM/ECF on this 22nd day of August, 2018 on **Maria Chapa Lopez**, United States Attorney, and **Kyle S. Cohen, Esq.**, Assistant United States Attorney, 2110 First Street, Suite 3-137, Fort Myers, Florida 33901.


By:____/s/ Nicole Hughes Waid
          Nicole Hughes Waid, Esq.

18